IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

LAVERNE JOHNSON                                                            PLAINTIFF

V.                                                      CAUSE NO.: 2:11CV212-SA-SAA

PARKWOOD BEHAVIORAL HEALTH
SYSTEM, an entity owned by
UNIVERSAL HEALTH SERVICES
FOUNDATION, a/k/a UNIVERSAL
HEALTH SERVICES, INC., a foreign corporation                        DEFENDANT

MEMORANDUM OPINION

Plaintiff filed this action alleging violations of the Americans with Disabilities Act (ADA) and Title VII for disability discrimination and retaliation. Defendant filed a Motion for Summary Judgment [68] on those claims. Because Plaintiff has failed to establish a genuine dispute of material fact as to any of her claims, Defendant's Motion for Summary Judgment [68] is GRANTED.

*Factual and Procedural Background*

Plaintiff Laverne Johnson applied for the position of Director of Utilization Review at Parkwood Behavioral Health on September 23, 2008. Parkwood operates a behavioral healthcare facility providing comprehensive behavioral health and addictive disease treatment for adults, adolescents and children. Prior to being hired, Plaintiff was required to undergo a pre-employment medical screening at an off-site medical center. Plaintiff completed an intake questionnaire detailing her medical history. Plaintiff failed to indicate any mental health issues, prescriptions taken to manage her mental health issues, or prior hospitalizations resulting from her mental health issues.

Plaintiff was hired as the Director of Utilization Review and was provided a description of the job duties she was expected to perform. As Director of Utilization Review, Plaintiff was responsible for that department's successful operation, which included completing Family Medical Leave Act (FMLA) paperwork, being prepared for daily meetings on discharges, and negotiating with insurance companies for coverage needed for patients at Parkwood. Plaintiff was evaluated on February 5, 2009, for her 90-day review. That evaluation revealed that plaintiff was having difficulties preparing spreadsheets necessary for the daily discharge meetings, and using the database system specific to Parkwood. Plaintiff acknowledged that when asked during those daily meetings about particular patients that she should have been prepared to discuss, she would sometimes answer "I don't know" or provide inaccurate information.

In March of 2010, Plaintiff became aware that Parkwood changed the titles for second-level managers in January of that year. Instead of "Director of Utilization Review," Plaintiff's new title was "Manager of Utilization Review." Plaintiff's duties, rate of pay, and office location did not change. After notification of the change in title, Plaintiff called Parkwood's Global Compliance Hotline to complain about three things: (1) her title change, (2) being told not to wear a white lab coat with "Dr. Laverne Johnson" stitched thereon, and (3) her salary not being increased after her 90-day probationary period. Plaintiff admits that she did not complain about discrimination in that phone call.

Initially, Sandra Wallace, the CFO of Parkwood and the person who hired Plaintiff, was Plaintiff's supervisor. Joyce Tyler, the Director of Quality and Risk Management, took over as Plaintiff's supervisor after the CEO changed at Parkwood in June of 2010. Plaintiff was given a

written warning on August 4, 2010, due to Plaintiff's "inattention to duties" and "unsatisfactory job performance."

Plaintiff, through her attorney, advised Parkwood on September 3, 2010, that she suffered from a medical condition and that an accommodation was needed. Thereafter, Audrey Johnson, Parkwood's Human Resources Director, gave Plaintiff the requisite ADA and FMLA paperwork to request medical leave and/or an accommodation. Plaintiff indicated by her paperwork that she suffered from bipolar disorder, cardiac/heart problems, arthritis, sleep apnea, diabetes, and migraines. Plaintiff's physician completed the required paperwork and indicated that Plaintiff "may not be able to perform essential [functions] of job during her flareups," and needed "coverage . . . available . . . when she has flare-ups or when she needs to take time off for doctors appointments" to accommodate Plaintiff. Plaintiff provided a list of appointment dates to Audrey Johnson who requested that Plaintiff attempt to make her doctor's appointments in the mornings or afternoons so as to provide minimal interruption in the work day. Plaintiff acknowledged that all the medical appointments she provided to Audrey Johnson were accommodated. Moreover, Plaintiff never requested any time off for any "flare-ups."

Plaintiff was issued a "Final Written Warning" on October 29, 2010, for Plaintiff's failure to "appropriately process a court commitment on a patient, resulting in [Parkwood's] inability to treat the patient effectively." The warning required Plaintiff to improve her performance immediately or face termination.

Plaintiff was terminated on April 1, 2011. The following reasons were given for her termination: Plaintiff's failure to exhibit knowledge of planned care for patients leaving acute services and Plaintiff's failure to provide trends and supporting patient care data to support information in her monthly reports, thereby "seriously compromis[ing] the quality of patient care

services." The decision to terminate Plaintiff was indisputably made by Joyce Tyler, Plaintiff's supervisor, with approval by CEO Ken House.

Plaintiff thereafter filed a Charge of Discrimination with the EEOC on April 4, 2011, alleging that she was denied a reasonable accommodation for her disability and discharged in retaliation for "making a complaint in or about August or September 2010." After receiving her Notice of Suit Rights letter, Plaintiff filed this lawsuit alleging she was unlawfully terminated because of her disability and retaliated against for making an internal complaint to Parkwood's Global Compliance Hotline. Defendant contends there are no genuine disputes of material fact to warrant a jury trial on this matter.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact." FED. R. CIV. P. 56(c)(1). The court is only obligated to consider cited materials but may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The court must resolve factual controversies in favor of the nonmovant "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Discussion and Analysis*

Federal employment discrimination claims based on circumstantial evidence must be reviewed under the McDonnell Douglas burden-shifting standard. Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004). First, the plaintiff-employee must make a prima facie showing of intentional discrimination. Id. (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). Then, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). If the employer satisfies its burden, the plaintiff must then offer sufficient evidence to show that the proffered reason is a pretext for discrimination – the defendant's alleged nondiscriminatory reason is false and the real reason for the adverse action is disability discrimination. See McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 282 (5th Cir. 2000).

The ADA prohibits discrimination in employment settings against qualified individuals with disabilities. In order to make a prima facie case of disability discrimination under the ADA, the plaintiff must show that she (1) has a disability; (2) was qualified for her position; (3) suffered an adverse employment action because of her disability; and (4) was replaced by or

5

treated less favorably than a non-disabled employee. McInnis, 207 F.3d at 279-80; 42 U.S.C. § 12112(a). Failure to accommodate a qualified individual's known disability is considered discrimination unless the employer can show that the accommodation would impose an undue hardship on the employer's business. 42 U.S.C. § 12112(b)(5). The plaintiff bears the burden of requesting reasonable accommodations. Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007).

The ADA does not prohibit adverse action due to a consequence of a disability, such as being unable to report to work regularly or to perform essential job duties as a result of an injury or illness. See Hypes on Behalf of Hypes v. First Commerce Corp., 134 F.3d 721, 726-27 (5th Cir. 1998). Thus, the ADA does not insulate an employee from adverse action taken by an employer because of misconduct in the workplace, even if his improper behavior is arguably attributable to an impairment. See Hamilton v. Southwestern Bell Tel. Co., 136 F.3d 1047, 1052 (5th Cir. 1998). In short, an employee "cannot hide behind the ADA and avoid accountability for his actions." Hamilton, 136 F.3d at 1052.

Parkwood claims that Plaintiff cannot establish a prima facie case of disability discrimination. Indeed, Parkwood insists that Plaintiff cannot show any causal connection between her termination[1] and her alleged disability or that she was replaced by a non-disabled person or treated less favorably than a non-disabled employee. Plaintiff's only response is her contention that Joyce Tyler was named as her supervisor in order to terminate her. Moreover, Plaintiff contends that the real reason for her termination was due to her requests for leave to seek medical treatment for bipolar disorder and in retaliation for her complaint on Parkwood's

---

[1] To the extent that Plaintiff attempts to argue that her title change from "Director of Utilization Review" to "Manager of Utilization Review" is an adverse employment action, that contention fails. Plaintiff admittedly suffered no change in pay, duties, or even office space. Therefore, Plaintiff cannot show that the change in title affected the terms and conditions of her employment in order to place that action in the purview of an ADA or Title VII violation.

Global Compliance Hotline. Plaintiff offers no argument that she was replaced by a non-disabled person or treated less favorably than a non-disabled employee. Thus, Plaintiff fails to assert a prong of the prima facie case for which she would bear the burden at trial.

Even if this Court were to assume Plaintiff had put forth any evidence to establish her prima facie case, Plaintiff has failed to show that there are any genuine disputes of material fact regarding Parkwood's legitimate, non-discriminatory reason for her termination. Parkwood provided documentation of the following reasons for Plaintiff's termination: (1) Plaintiff's failure to exhibit knowledge of planned care for patients leaving acute services; and (2) Plaintiff's failure to provide trends and supporting patient care data to support information in her monthly reports, which seriously compromised the quality of patient care services. There is no evidence that Parkwood's stated reasons for termination were a pretext for disability discrimination.

Plaintiff sought an accommodation of a reevaluation of her current job duties, more staff in her department, the ability to take time off when flare-ups occurred and to attend medical appointments, and a decreased work load within her department. Her physician concurred that Plaintiff needed to be able to take time off for flare-ups and for doctor's appointments. While Plaintiff admitted that she was allowed to take time off for her doctor's appointments, she noted that she never attempted to take time off for her flare-ups. She also acknowledged that there was no way for Parkwood to know she needed time off for flare-ups because she did not inform anyone of her flare-ups. Therefore, Plaintiff admittedly did not request an accommodation of time for a flare-up. To the extent that Plaintiff claims she was denied an accommodation because Parkwood failed to lessen the work load of her department, the Court finds that Plaintiff has failed to assert a claim under the ADA. See Hypes, 134 F.3d at 726-27 (the ADA does not

prohibit an adverse employment action due to a failure to perform essential job duties as a result of an injury or illness).

Likewise, Plaintiff's retaliation claim does not make it past the prima facie case. To establish a prima facie case of retaliation, a plaintiff must show (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal link between the protected activity and the adverse employment action. Hernandez v. Yellow Transp., Inc., 641 F.3d 118, 129 (5th Cir. 2011). An employee has engaged in protected activity if she has either (1) opposed any practice made unlawful by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996). "An employee's informal complaint to an employer may constitute participation in a protected activity, provided that the complaint is in opposition to conduct that is unlawful, and the employee holds a good faith, reasonable belief of the conduct's unlawfulness." Clark v. Chickasaw Cnty., Miss., No. 1:09CV192-SA-JAD, 2010 U.S. Dist. LEXIS 97227, 2010 WL 3724301, at *3 (N.D. Miss. Sept. 16, 2010) (citations and quotation omitted); see also Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 348 (5th Cir. 2007) (noting a plaintiff must show she had a "reasonable belief that the employer was engaged in unlawful employment discrimination"). "Complaints to employers that do not complain of conduct protected by Title VII do not constitute protected activities under the statute." Clark, 2010 U.S. Dist. LEXIS 97227, 2010 WL 3724301, at *3 (citation and internal quotation marks omitted).

Plaintiff cannot meet the first prong because her complaints did not oppose any unlawful conduct. Plaintiff called the Global Compliance Hotline to complain about her title change, being asked not to wear a white lab coat to work, and her lack of salary increase after her 90-day

evaluation. Plaintiff noted that the title change did not affect her pay or duties, and that all other second-tier "directors" had their title changed to "manager." Further, Parkwood did ask Plaintiff to refrain from wearing a white lab coat with the title "Dr. Laverne Johnson" stitched onto the pocket due to the likelihood that she would be mistaken for a medical doctor with treatment privileges at a medical facility.[2] Parkwood further notes that while one would normally expect a pay increase after the 90-day evaluation period, Plaintiff was never promised an increase or received any documentation promising such. Her complaints, as admitted, did not concern any practice made unlawful by Title VII, and thus, cannot serve as the basis for a Title VII retaliation claim. Accordingly, Plaintiff's retaliation claim is dismissed.

*Conclusion*

Plaintiff cannot meet her prima facie burden for either disability discrimination or retaliation. Even if Plaintiff could, however, she has failed to bring forth any genuine disputes of material fact to show that her termination was because she was disabled or in retaliation for making complaints to Parkwood's Global Compliance Hotline. Accordingly, Plaintiff's claims are dismissed, and this case is closed.

SO ORDERED, this the 30th day of April, 2013.

                                                                        **/s/ Sharion Aycock**
                                                                        **U.S. DISTRICT JUDGE**

---

[2] Plaintiff asserts her Doctorate of Theology degree entitled her to a white lab coat embossed with "Dr. Laverne Johnson."